**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| DYSON, INC., an Illinois Corporation | ) | |
| | ) | FILED: APRIL 11, 2008 |
| Plaintiff, | ) | 08CV2068     EDA |
| vs. | ) No. | JUDGE KENDALL |
| | ) | MAGISTRATE JUDGE BROWN |
| LINENS 'N THINGS, INC, a Delaware | ) Judge | |
| Corporation, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## DEFENDANT LINENS 'N THINGS, INC.'S NOTICE OF REMOVAL

Defendant Linens 'N Things, Inc. ("LNT"), files and serves this Notice of Removal to remove this action from the Circuit Court of Cook County, Illinois, to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. Removal is based on the following grounds:

1.     The Plaintiff, Dyson, Inc. ("Dyson"), commenced this lawsuit against LNT on March 11, 2008. The lawsuit bears the same title as above and is docketed in the Circuit Court of Cook County, Illinois, as Case No. 2008 L 002762 (the "Action").

2.     LNT received service of a Summons and the Complaint on March 14, 2008, by personal service. This Notice of Removal is being filed within thirty days after the service of the Summons and Complaint and is therefore timely filed pursuant to 28 U.S.C. § 1446(b).

3.     Pursuant to 28 U.S.C. §1446(a), a copy of the entire State Court record is attached hereto as Exhibit A.

4.     Plaintiff Dyson is now, and was at the commencement of this action, an Illinois Corporation with its principal place of business in Illinois. (Ex. A, at ¶ 15.)

5.      Defendant LNT is now, and was at the commencement of this action, a Delaware Corporation with its principal place of business in New Jersey. (Ex. A., at ¶ 16.)

6.      It is apparent on the face of the Complaint that Dyson seeks recovery of an amount in excess of $75,000, exclusive of interest and costs.   Dyson specifically requests judgment "in an amount in excess of $1,293,462.50." (Ex. A, at 9.)

7.      Because this is a civil action between citizens of different states, and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, the action is one in which the United States district courts have original jurisdiction pursuant to 28 U.S.C. § 1332, and may therefore be removed to this court.

8.      LNT will promptly provide notice of the removal of this action to Dyson and to the Circuit Court of Cook County, by filing a "Removal Notice," together with a copy of this "Notice of Removal," in the Circuit Court of Cook County, and by serving copies of the same on Plaintiffs pursuant to 28 U.S.C. § 1446(d).

WHEREFORE, Defendant Linens 'N Things, Inc. respectfully requests that this action be removed to this Court.

Dated:  April 11, 2008.

Respectfully submitted,

s/ Casey L. Westover
Attorney for Defendant

Casey L. Westover (6276161)
Reed Smith LLP
10 South Wacker Drive
Chicago, IL 60606-7507
(312) 207-1000
cwestover@reedsmith.com

Barry M. Golden
Peter L. Loh
Gardere Wynne Sewell LLP
1601 Elm Street, Suite 3000
Dallas, TX 75201
(214) 999-4746
ploh@gardere.com
bgolden@gardere.com

## CERTIFICATE OF SERVICE

I, Casey L. Westover, one of the attorneys for Defendant Linens 'N Things, Inc., hereby certify that on April 11, 2008, I caused a true and correct copy of the foregoing **Defendant Linen 'N Things, Inc.'s Notice of Removal** to be served via U.S. Mail upon:

Timothy R. Lavender and Caroline C. Plater
Kelley Drye & Warren LLP
333 West Wacker Drive
Suite 2600
Chicago, IL 60606

_____ s/ Casey L. Westover _____
Casey L. Westover

# EXHIBIT A

| 2120 - Served | 2121 - Served | |
|---|---|---|
| 2220 - Not Served | 2221 - Not Served | |
| 2320 - Served By Mail | 2321 - Served By Mail | |
| 2420 - Served By Publication | 2421 - Served By Publication | |
| SUMMONS | ALIAS - SUMMONS | CCG N001-10M-1-07-05 ( ) |

## IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW

2008L002762
CALENDAR/ROOM V
TIME 00:00
Breach of Contract

(Name all parties)

DYSON, INC.

v.

LINENS 'N' THINGS , INC .

No. _____

## SUMMONS

**To each Defendant:**

YOU ARE SUMMONED and required to file an answer to the complaint in this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the required fee, in the Office of the Clerk of this Court at the following location:

☑ Richard J. Daley Center, 50 W. Washington, Room _____, Chicago, Illinois 60602

| ☐ **District 2 - Skokie** 5600 Old Orchard Rd. Skokie, IL 60077 | ☐ **District 3 - Rolling Meadows** 2121 Euclid Rolling Meadows, IL 60008 | ☐ **District 4 - Maywood** 1500 Maybrook Ave. Maywood, IL 60153 |
|---|---|---|
| ☐ **District 5 - Bridgeview** 10220 S. 76th Ave. Bridgeview, IL 60455 | ☐ **District 6 - Markham** 16501 S. Kedzie Pkwy. Markham, IL 60426 | ☐ **Child Support** 28 North Clark St., Room 200 Chicago, Illinois 60602 |

You must file within 30 days after service of this Summons, not counting the day of service.
**IF YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE RELIEF REQUESTED IN THE COMPLAINT.**

**To the officer:**

This Summons must be returned by the officer or other person to whom it was given for service, with endorsement of service and fees, if any, immediately after service. If service cannot be made, this Summons shall be returned so endorsed. This Summons may not be served later than 30 days after its date.

WITNESS, _____ 2008

Atty. No.: 16633

Name: Caroline C. Plater/Kelley Drye & Warren LLP

Atty. for: Plaintiff, Dyson Inc.

Address: 333 W. Wacker Drive, Suite 2600

City/State/Zip: Chicago, IL 60606

Telephone: 312-857-2501

Service by Facsimile Transmission will be accepted at: _____

Clerk of Court

Date of service: 3/4/08 _____
(To be inserted by officer on copy left with defendant or other person)

(Area Code)    (Facsimile Telephone Number)

**DOROTHY BROWN, CLERK OF THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS**

**<u>Service List</u>**

**<u>Defendant</u>**
Linens 'N' Things, Inc.
c/o Registered Agent, Corporation Service Company
2711 Centerville Road, Suite 400
Wilmington, DE 19808

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

DYSON, INC.,

       Plaintiff

v.

LINENS 'N THINGS, INC,

       Defendant.

No.

2008L002762
CALENDAR/ROOM V
TIME 00:00
Breach of Contract

## COMPLAINT

Plaintiff, DYSON, INC. ("Dyson" or "Plaintiff"), by and through its attorneys,

Kelley Drye & Warren, LLP, complains of Defendant, LINENS 'N THINGS, INC. ("Defendant"

or "LNT"), as follows:

### Overview of Action and Relief Sought

1.    This action is for breach of contract, unjust enrichment and violation of the

Illinois Uniform Deceptive Trade Practices, arising from LNT's continuing bad-faith refusal to

pay for certain goods supplied by Dyson pursuant to the parties' agreement dated April 1, 1999,

and LNT's subsequent disparagement of Dyson's products to customers and others after Dyson

stopped shipping products to LNT due to its failure to maintain credit insurance.

2.    On or about April 1, 1999, Dyson and LNT entered into a contract whereby

Dyson as the Seller agreed to the sale of certain Goods to LNT as the Buyer (the "Contract"). (A

copy of the Contract is attached hereto as Exhibit A).

3.      Under the Contract, Dyson agreed to deliver Goods described in LNT's Acknowledgment of Order form and LNT agreed to make timely payments for all Goods sold by Dyson to LNT.

4.      Specifically, Section 9 of the Contract states as follows:

> **Payment**
> 1.      Unless an agreed credit period is specified in the Contract the Contract price is to be paid forthwith upon receipt of invoice.
>
> 2.      Payment shall be made direct to the Seller and the Seller's official receipt shall be the only acknowledged discharge of any debt. The Buyer shall not be entitled to withhold payment of any amount due to the Seller under the Contract by reason of any payment to a third party, credit, set-off, counter-claim, allegation of incorrect or defective goods, or for any other reason whatsoever which the Buyer may allege excuses him from performing his obligations under the Contract.
>
> 3.      The Seller shall be entitled to charge interest on any overdue sum at the rate of 5 per cent per annum above the prime lending rate for the time being of the Commonwealth Bank of Australia Limited from the due date until the date of actual payment. The Buyer shall also reimburse to the Seller any legal costs and debt collection agency's fees incurred by the Seller in recovering or attempting to recover overdue payments from the Buyer.

Exhibit A, Sect. 9.

5.      Dyson timely delivered all Goods ordered by LNT and has otherwise preformed all of its obligations under the Contract.

6.      Unfortunately, LNT has, without justification, refused to pay – and continues to refuse to pay – the balance due to Dyson under the Contract and open account invoices, which to date totals $1,293,462.50. (A copy of the open account invoices and balance due is attached hereto as Exhibit B.)[1]

---

[1]      Exhibit B contains a duplicate shipment invoice, dated 2/14/08, in the amount of $31,551.00, that is not part of the damages due or sought in this action.

7.　　The entire amount of $1,293,462.50, due under the open invoices was to be paid by LNT by February 19, 2008.

8.　　LNT has not indicated that it will pay the balance on its account with Dyson.

9.　　In addition, as of January 18, 2008, LNT's solvency and continued ability to pay has come into question as a result of changes in its credit insurance carriers, reductions in its credit insurance limits and ultimately being dropped by its credit insurance carrier, CIT Group/Commercial Services, Inc. ("CIT").

10.　　As a result of being dropped by CIT on January 18, 2008, LNT no longer has credit insurance, a requirement for doing business with Dyson.

11.　　Moreover, under Section 11 of the Contract, Dyson has the following rights in the event that it appears that LNT is insolvent or may default:

**Insolvency and Default**

> In the event of the Buyer becoming (or appearing to the Seller to be about to become) bankrupt or insolvent, ceasing or threatening to cease business, dying or going (or appearing to be the Seller to be about to go) into liquidation, suffering the appointment of a receiver, receiver and manager or voluntary administrator, failing to pay its debts as the become due, making any arrangement with creditors, failing to make any payment due hereunder or being in breach of any other term of the Contract the Seller shall be entitled, without prejudice to its other rights, to postpone delivery (both in respect to the Contract or series of Contracts in question and any other contracts with the Buyer) until such payment has been made or other breach rectified and also (or as an alternative) to determine the Contract (any/or any other such contracts) and to recover payment for all deliveries already made (whether or not such payment is otherwise then due) and for the cost of materials and labour already expended for the purpose of future deliveries (less any allowance of the value thereof as utilized by the Seller for other purposes) and also to recover from the Buyer a sum equivalent to the Seller's loss of profit arising out of such determination.

Exhibit A, Sect. 11.

12.    Dyson stopped shipping Goods to LNT as of December 21, 2007, as allowed under Section 11 of the Contract.

13.    After Dyson stopped shipping Goods to LNT, and LNT was unable to meet customer requests for Dyson's products, LNT engaged in a course of conduct which disparaged Dyson's products and business by making false or misleading representations of fact, stating, falsely, that the lack of Dyson products in LNT's stores was a result of problems with Dyson's production and/or that LNT had decided not to stock Dyson products because of problems with them.

14.    LNT's false and misleading statements about Dyson's products and business are in direct violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/2(8) and must be enjoined.

## The Parties

15.    Dyson, Inc. is a corporation organized under the laws of the State of Illinois, with its principal place of business in Chicago, Illinois. Among other things, Dyson is in the business of marketing and selling floorcare products.

16.    Upon information and belief, LNT is a Delaware Corporation with its principle place of business located in Clifton, New Jersey. LNT is a house wares retail chain store.

## Factual Background

17.    LNT purchased from Dyson certain Goods, totaling $1,293,462.50. This balance was accrued during the month of December, 2007, and included 10 invoices. (*See* Exhibit B).

18.    Pursuant to the Contract and the parties' course of dealing, LNT would order and Dyson would ship Goods to LNT on an invoice basis, with periodic fixed payment dates. In

order to purchase Goods from Dyson, LNT was required to have credit insurance to insure payment of outstanding invoices.

19.   The total price of LNT's outstanding and unpaid invoices is $1,293,462.50.

20.   LNT has made partial payment of invoices from Dyson during the period of the Contract, most recently submitting a payment on or about February 12, 2008.

21.   LNT's partial payment establishes unequivocally LNT's assent and acknowledgement that the Contract is valid and enforceable, and that Dyson is entitled to the full payment required under the Contract.

22.   Despite numerous requests, LNT has refused to perform as required under the Contract and open invoices by making full payment of the amounts due under the same.

23.   LNT, without justification, has refused and continues to refuse to make payments due under the Contracts and open invoices.

## COUNT I
### (Breach Of Contract)

24.   Dyson realleges and incorporates paragraphs 1 through 23 above, as though fully set forth herein.

25.   The Contract and associated orders and invoices between Dyson and LNT are valid and enforceable under Illinois law.

26.   Pursuant to the terms and conditions of the Contract and related orders and invoices, Dyson performed its obligations by delivering Goods to LNT.  Accordingly, Dyson fulfilled all of its obligations under the Contract and related orders and invoices.

27.    To date, Dyson has only received partial payments of the monies due under the Contract and open invoices. Pursuant to the unambiguous terms and conditions of the Contract and invoices, Dyson is still owed at least $1,293,462.50 from LNT.

28.    LNT breached its Contract with Dyson by failing to pay Dyson the balance due under the Contract and open invoices, totaling $1,293,462.50, in a timely manner.

29.    Under Illinois law, all parties to a contract owe a duty of good faith and fair dealing. Accordingly, LNT was obligated by law under the Contract to deal fairly with Dyson and in good faith.

30.    LNT has acted in bad faith by refusing to tender the remaining amount owed to Dyson pursuant to the terms and conditions of the Contract. Accordingly, LNT has also breached its duties of good faith and fair dealing implied in every contract by law in Illinois.

31.    LNT has never offered Dyson any acceptable legal justification or excuse for their failure to tender complete payment to Dyson.

32.    As a result of LNT's breach of their Contract with Dyson, Dyson has suffered damages and continues to suffer damages in the amount of approximately $1,293,462.50, plus the maximum rate of interest and other consequential damages provided for under the Contract and Illinois law.

WHEREFORE, for the above-stated reasons, Plaintiff, Dyson, Inc. prays that this Honorable Court grant judgment in its favor and against Linens 'N Things, Inc.:

a.    in an amount in excess of $1,293,462.50, plus interest and other fees provided for under the Contract;

b.    attorneys fees pursuant to Section 9.(3) of the Contract;

c.    for return of the Goods; and

    d.    such other relief as this Court deems just and equitable.

## COUNT II
### (Unjust Enrichment)

    33.    Dyson realleges and incorporates paragraphs 1 through 32 above, as though fully set forth herein.

    34.    LNT has been unjustly enriched by the receipt and benefit of the Goods delivered by Dyson, to the detriment of Dyson.

    35.    LNT's failure to pay Dyson for the Goods violates fundamental principles of justice, equity, and good conscience.

    36.    Dyson is entitled to be compensated for the Goods provided to LNT by Dyson for which Dyson was not fully compensated.

    WHEREFORE, for the above-stated reasons, Plaintiff, Dyson, Inc., prays that this Honorable Court grant judgment in its favor and against Linens 'N Things, Inc.:

    a.    in an amount in excess of $1,293,462.50, plus interest and other fees provided for under the Contract;

    b.    attorneys fees pursuant to Section 9.(3) of the Contract;

    c.    for return of the Goods; and

    d.    such other relief as this Court deems just and equitable.

## COUNT III
### (Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq.*)

    37.    Dyson realleges and incorporates paragraphs 1 through 36 above, as though fully set forth herein.

38.     LNT's conduct constitutes a violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS §§ 510/1 *et seq.*, because LNT engaged in a course of conduct which disparaged Dyson's products and business by making false or misleading representations of fact, in representing that the lack of Dyson products in LNT's stores was a result of problems with Dyson's production, and/or that LNT had decided not to stock Dyson products because of problems with them.

39.     The false and disparaging statements made by LNT regarding Dyson include, but are not limited to, the following representative sample of known instances:

a.     Posting an 8" x 10" sign in a Clarence, New York LNT store stating that certain Dyson products were out of stock "due to production problems";

b.     Informing LNT store managers and employees that Dyson was having "production problems", which these store employees then repeated to Dyson representatives and customers in the Clarence, New York, Buffalo, New York and numerous other stores;

c.     Informing Dyson representatives, including but not limited to Chris Payne, a western region sales representative, and, on information and belief, customers in that region, that LNT was no longer carrying Dyson products; and

d.     Informing customers in such markets as Colorado Springs, Colorado, that LNT was no longer carrying Dyson products because they were having problems with Dyson and were not ordering Dyson products any more.

40.     LNT knew at the time it made the foregoing statements that Dyson was not having any production problems.

41.     LNT knew at the time it made the foregoing statements that the decision to stop carrying Dyson products was not of LNT's choice. Rather, LNT no longer had Dyson products

to put on the shelves because LNT failed to pay Dyson and Dyson therefore stopped shipping product to LNT.

42.    As a result of LNT's conduct in violation of the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS §§ 510/1 *et seq.*, Dyson has suffered and will continue to suffer damages in an amount to be proven at trial.

43.    In addition, LNT should be enjoined from making any false and misleading statements regarding Dyson's products and/or business.

WHEREFORE, for the above-stated reasons, Plaintiff, Dyson, Inc., prays that this Honorable Court grant judgment in its favor and against Linens 'N Things, Inc.:

    a.    in an amount in excess of $1,293,462.50, plus interest and other fees provided for under the Contract;

    b.    for return of the Goods;

    c.    for an injunction preventing Linens 'N Things from disparaging Dyson, its products and/or its business in any way, pursuant to 815 ILCS 510/3;

    d.    for attorney fees and costs, pursuant to 815 ILCS 510/3; and

    e.    such other relief as this Court deems just and equitable.

Dated:  March 11, 2008

_____
One of the Attorneys for Plaintiff,
DYSON, INC.

Timothy R. Lavender
Caroline C. Plater
KELLEY DRYE & WARREN LLP
333 West Wacker Drive
Suite 2600
Chicago, IL  60606
(312) 857-7070
Firm No. 016633

A

DYSON, INC
520 N. Erie, Suite 410
Chicago, IL 60610
Phone: (312) 469-5950     Fax: (312) 469-5952

Attn: Julie
From: Bill Nadel


**dyson**

Form FC:A09
General Conditions of Sale

1 April 1999

1. **DEFINITIONS**
   In these Conditions the following expressions shall have the following meanings:-
   The Seller      Dyson Inc.
   The Buyer       The person, firm or company, referred to as "the Buyer" in the Seller's
                   Acknowledgement of Order form
   The Goods       The Goods described in the Seller's Acknowledgement of Order form
   The Contract    The Contract for the sale of the Goods by the Seller to the Buyer
   Particulars of  The particulars of the Contract set out on the face of the Seller's
   Contract        Acknowledgement of Order form.

2. **CONSTRUCTION OF CONTRACT**
   (1) These Conditions shall apply to all contracts of sale (and to any ancillary services) between the Seller and the Buyer.
   (2) The terms of the Contract shall consist of the Particulars of Contract and these Conditions of Sale. These Conditions shall be construed subject to the Particulars of Contract.
   (3) No other terms contained in any document issued by either party or in any written or oral communication between the parties shall apply to the Contract nor shall these Conditions or the Particulars of Contract be modified without the written agreement of the Seller on or after the date of the Seller's Acknowledgement of Order.
   (4) In order that the Contract shall be a complete statement of the understanding between the parties with regard to the sale of the Goods, the Buyer must ensure that any pre-contractual representation on which it wishes to rely has been specified in the Particulars of Contract. In entering into the Contract, the Buyer does not rely upon any such representation made by or on behalf of the Seller which has not been so specified.
   (5) Descriptions and illustrations of the Goods submitted with any quotation or contained in any brochure or catalogue are only a general representation of the Goods and are not intended to be reliable with regard to details, as design modifications and improvements may be introduced.

3. **QUOTATIONS AND ORDERS**
   (1) Unless accepted before lapse or withdrawal, quotations made by the Seller shall automatically lapse after seven days, but may be withdrawn earlier.
   (2) All orders placed by the Buyer on the Seller shall be subject to these Conditions of Sale.
   (3) There shall be no binding contract until the Seller has accepted the Buyer's order by sending to the Buyer an Acknowledgement of Order form. No employee or agent of the Seller has authority to contract in any other manner.

4. **DELIVERY**
   (1) Delivery shall take place when the Goods are unloaded at or delivered to the Buyer's premises or other delivery location specified in the Contract, except that if the Buyer collects or arranges collection of the Goods from the Seller's premises, or nominates a carrier for the Goods, delivery shall take place when the Goods are loaded onto the collection or carrier's vehicle.
   (2) The Seller will endeavor to complete delivery on or before any delivery dates requested by the Buyer or estimated by the Seller but the Seller will not be liable for any delay in delivery.
   (3) The quantity of Goods delivered under the Contract shall be recorded by the Seller upon dispatch from the Seller's factory or warehouse and the Seller's record shall be accepted by the Buyer as conclusive evidence of the quantity delivered. It is the Buyer's responsibility to notify the Seller if the Goods have not been received within five days of the receipt of the Seller's invoice therefore. If no notification is made the Buyer shall be deemed to have received the Goods.
   (4) The Seller shall be entitled to deliver the Goods by installments and to invoice each installment separately.
   (5) The delivery of a greater or lesser quantity of the Goods than the quantity provided for in the Contract, the delivery of other goods not provided for in the Contract, or the delivery of Goods only some of which are defective, shall not entitle the Buyer to reject all the Goods delivered or to terminate the Contract in whole or in part nor shall any incorrect delivery or defect in respect of one or more installments entitle the Buyer to terminate the Contract or subsequent installments. Any claim in respect of error in quantity or type of Goods or in respect of the condition of Goods delivered must be made in writing to the Seller within five working days of receipt by the Buyer.

If the Seller agrees to arrange carriage or insurance on behalf of the Buyer, all charges and expenses in connection therewith shall be invoiced to the Buyer and paid within the period specified in Condition 9(1). The Seller shall not be liable for the suitability of the terms of any such carriage or the adequacy of any such insurance and sub-sections (2) and (3) of Section 35 of the Sale of Goods Act 1923 shall not apply to the Contract.

5.    PACKING
Packaging for the Goods shall be at the discretion of the Seller which shall have the right to pack the Goods in such manner and with such material and in such quantities as it, in its absolute discretion, thinks fit, unless detailed packaging instructions are received and agreed by the Seller prior to agreeing a price for the Goods and are then incorporated into the Contract.

6.    EXAMINATION AND CLAIMS
The Buyer shall upon delivery examine the Goods and shall promptly (but in any event within five working days of delivery) notify in writing the Seller (and the carrier, where relevant) of any apparent damage, defect or error in quantity or type of goods delivered. The Buyer shall comply with the carrier's rules, regulations and requirements so as, when appropriate, to enable the Seller to make a claim against the carrier in respect of any loss or damage in transit. Claims in respect of damage, defects or error in quantity or type of goods delivered not apparent on examination upon delivery must be notified in writing to the Seller within fourteen days of the date of delivery.

7    PROPERTY AND RISK
(1) The risk in the Goods shall pass to the Buyer upon delivery in accordance with the Contract notwithstanding that such delivery may not be at the final destination.
(2) The property in the Goods shall remain the Seller until, and shall pass to the Buyer only when:
    (a) payment shall have been made in full for:
        (i)    the Goods the subject of the Contract; and
        (ii)   all other goods the subject of any other contract between the Seller and the Buyer which, at the time of payment of the full price of the Goods sold under this Contract, have been delivered to the Buyer but not paid for in full;
    (b) the Buyer sells the Goods to its customers by way of bona fide sale.
If payment for the Goods is overdue in whole or in part the Seller may (without prejudice to any of its other rights) recover or resell such of the Goods as are then still the Seller's property, or any of them, and may enter upon the Buyer's premises by its servants or agents for that purpose. Without prejudice to the provisions of clause 11 such payments shall become due immediately upon the occurrence of any of the events referred to in clause 11. Until the property in the Goods has passed to the Buyer, the Buyer shall store the Goods at its premises to which the Goods were consigned by the Seller, separately from goods belonging to the Buyer, and shall not remove any batch numbers or other identification, or any notices stating that they are the Seller's property. The Seller shall nevertheless be entitled at any time to pass the property in the Goods to the Buyer by giving the Buyer written notice to that effect. Without further consideration the Seller shall have the irrevocable authority of the Buyer to resell any Goods repossessed by the Seller pursuant hereto.

8    PRICES
(1) Unless otherwise stated in the Particulars of Contract, prices for the Goods shall be ex-works and shall be exclusive of carriage and insurance.
(2) Notwithstanding any quotation or any other statement as to price which may have been given in or in connection with the Contract the Contract price shall be the Seller's list price prevailing at the date of dispatch. Prior to dispatch of the Goods, the Seller shall notify the Buyer of any variation in the price between the date of the Seller's Acknowledgement of Order and the date of dispatch.

9    PAYMENT
(1) Unless an agreed credit period is specified in the Contract the Contract price is to be paid forthwith upon receipt of invoice.
(2) Payment shall be made direct to the Seller and the Seller's official receipt shall be the only acknowledged discharge of any debt. The Buyer shall not be entitled to withhold payment of any amount due to the Seller under the Contract by reason of any payment to a third party, credit, set-off, counter-claim, allegation of incorrect or defective goods, or for any other reason whatsoever which the Buyer may allege excuses him from performing his obligations under the Contract.
(3) The Seller shall be entitled to charge interest on any overdue sum at the rate of 5 per cent per annum above the prime lending rate for the time being of the Commonwealth Bank of Australia Limited from the due date until the date of actual payment. The Buyer shall also reimburse to the Seller any legal costs and debt collection agency's fees incurred by the Seller in recovering or attempting to recover overdue payments from the Buyer.

10    WARRANTIES AND EXEMPTIONS

IN THE EVENT OF THE DELIVERY OF ARTICLES NOT ANSWERING TO THE CONTRACTUAL DESCRIPTION OR OF THE GOODS DEVELOPING, UNDER PROPER USE, ANY DEFECT DURING A PERIOD OF 24 MONTHS FROM THE DATE OF DELIVERYT TO THE BUYER, DUE TO DEFECTIVE MATERIALS OR WORKMANSHIP (OTHER THAN THE GOODS OR PACKAGING PRODUCED TO THE BUYER'S SPECIFICATION), THEN PROVIDED THAT THE BUYER IS NOT IN BREACH OF ANY OF ITS OBLIGATIONS TO THE SELLER UNDER THIS OR ANY OTHER CONTRACT, THE SELLER SHALL, AT ITW OWN EXPENSE, REPLACE OR REPAIR SUCH ARTICLES OR GOODS AS ARE INCORRECT OR DEFECTIVE SO AS TO REMEDY THE DEFECTS OR, AT THE SELLER'S OPTION, REFUND THE PURCHASE PRICE ATTRIBUTABLE TO THE INCORRECT OR DEFECTIVE ITEMS, EXCEPT WHERE SUCH DEFECTS ARE ATTRIBUTABLE TO ACCIDENT, FAIR WEAR AND TEAR OR ANY ACTION OMISSION

– OR –

NEGLECT OF THE BUYER OR ITS AGENT
THE BUYER MUST GIVE THE SELLER NOTICE OF ANY ALLEGED DEFECT AS SOON AS IT BECOMES APPARENT, AND SHALL (UNLESS OTHERWISE INSTRUCTED BY THE SELLER) RETAIN THE GOODS AT THE BUYER'S PREMISES FOR INSPECTION BY THE SELLER AND GIVE THE SELLER ADEQUATE FACILITIES TO INVESTIGATE THE COMPLAINT AT THE BUYER'S PREMISES. IF THE SELLER SO REQUESTS, THE BUYER SHALL AT ITS OWN EXPENSE RETURN THE DEFECTIVE GOODS OR PARTS TO THE SELLER PROVIDED THAT F THE SELLER IS LIABLE TO REPLACE OR REPAIR SUCH DEFECTIVE GOODOS OR PARTS PURSUANT HERETO THEN THE SELLER SHALL REIMBURSE THE BUYER'S RESONABLE CARRIAGE EXPENSES IN CONNECTION THEREWITH. IF THE BUYER SHALL RETURN TO THE SELLER ANY GOODS OR PARTS WHICH ARE NOT DEFECTIVE, THE BUYER SHALL PAY THE COMPANY'' RESONABLE CHARGES FOR HANDLING, TESTING AND RETURNING SUCH ITEMS TO THE BUYER AS WELL AS ANY ASSOCIATED COSTS INCURRED BY THE SELLER.

11.    INSOLVENCY AND DEFAULT
In the event of the Buyer becoming (or appearing to the Seller to be about to become) bankrupt or insolvent, ceasing or threatening to cease business, dying or going (or appearing to be the Seller to be about to go) into liquidation, suffering the appointment of a receiver, receiver and manager or voluntary administrator, failing to pay its debts as they become due, making any arrangement with creditors, failing to make any payment due hereunder or being in breach of any other term of the Contract the Seller shall be entitled, without prejudice to its other rights, to postpone delivery (both in respect of the Contract or series of Contracts in question and any other contracts with the Buyer) until such payment has been made or other breach rectified and, also (or as an alternative) to determine the Contract (any/or any other such contracts) and to recover payment (or all deliveries already made (whether or not such payment is otherwise then due) and for the cost of materials and labour already expended for the purpose of future deliveries (less any allowance of the value thereof as utilised by the Seller for other purposes) and also to recover from the Buyer a sum equivalent to the Seller's loss of profit arising out of such determination.

12.    PATENTS ETC.
(1) Where all or any of the packaging for the Goods is produced to the Buyer's specification, the Buyer shall indemnify the Seller against all actions, claims, costs, damages or losses arising from any infringement of registered design, trade mark, design right, copyright or any similar protection in respect of the packaging so produced.
(2) Any reference by the Seller to patents, design rights, copyrights, registered designs, trade marks, and analogous forms of protection shall not constitute a warranty of the validity thereof.

13.    EXCLUSION OF DAMAGE
The law implies terms, conditions and warranties ("prescribed terms") into contracts for the supply of goods and services and prohibits the exclusion, restriction or modification of certain terms, conditions and warranties. Some prescribed terms permit a supplier to limit its liability for a breach of the prescribed terms. Except as provided by prescribed terms and to the fullest extent permitted by law:-
(1) The liability of the Seller in respect of a breach of a prescribed term relating to the products or any part thereof is limited at the option of the Seller to the replacement or repair of the products or any part thereof or payment of the cost of repairing or replacing the products or any part thereof;
(2) In these conditions the Buyer shall not under any circumstances have any cause of action against or right to claim or recover from the Seller for, or in respect of, any loss or damage of any kind whatsoever, caused directly or indirectly by any defect in material or workmanship of, or any other defect whatsoever in, or unsuitability for, any purpose of the products or any part thereof, or by default or negligence on the part of the Seller or of any servant, contractor or agent of the Seller relating to the supply of, or otherwise concerning the products or any part thereof.

Acceptance of above terms.
I/We accept the above terms and conditions of sale.

Signature _William Nadel_ on behalf of (Company Name)

Linens N Things

Name (please print) _William Nadel_ ........... Date _9/16/03_ ...........

_President_

10/28/04

ß

tatement of invoices as of March 4, 2008
yson, Inc.
00 West Chicago Ave.
uite 275
hicago, IL 60610

hone: 312-706-7020
ax: 312-846-7748



**LINENS N THINGS INC**

| Invoice# | Invoice Date | Due Date | Invoice Amount | Open Amount | Description / PO# | Original Order Ref. |
|---|---|---|---|---|---|---|
| 576995 | 12/21/07 | 02/19/08 | $ 294,120.00 | $ 294,120.00 | A001173044 | 476191 |
| 576996 | 12/21/07 | 02/19/08 | $ 294,120.00 | $ 294,120.00 | A001173044 | 476191 |
| 576997 | 12/21/07 | 02/19/08 | $ 294,120.00 | $ 294,120.00 | A001173044 | 476191 |
| 576998 | 12/21/07 | 02/19/08 | $ 111,929.00 | $ 111,929.00 | A001173044 | 476191 |
| 576999 | 12/21/07 | 02/19/08 | $ 122,550.00 | $ 122,550.00 | A001173044 | 476191 |
| 577000 | 12/21/07 | 02/19/08 | $ 122,550.00 | $ 122,550.00 | A001173044 | 476191 |
| 577001 | 12/21/07 | 02/19/08 | $ 49,020.00 | $ 49,020.00 | A001173044 | 476191 |
| 577196 | 12/21/07 | 02/19/08 | $ 3,825.00 | $ 3,825.00 | R001190733 | 499476 |
| 577197 | 12/21/07 | 02/19/08 | $ 1,012.50 | $ 1,012.50 | R001190734 | 499477 |
| 577225 | 12/21/07 | 02/19/08 | $ 216.00 | $ 216.00 | R001191106 | 500701 |
| 619414 | 02/14/08 | 04/14/08 | $ 31,551.00 | $ 31,551.00 | R001025806 | 339471 |
| | | Total | $ 1,325,013.50 | $ 1,325,013.50 | | |

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

DYSON, INC.,

          Plaintiff

    v.

LINENS 'N THINGS, INC.,

          Defendant.

No. 08 L 002762

FILED
Law Div. 2401
MAR 1 4 2008
DOROTHY BROWN
CLERK OF THE CIRCUIT COURT
OF COOK

3390

## ROUTINE MOTION FOR APPOINTMENT OF SPECIAL PROCESS SERVER

      Plaintiff, Dyson, Inc., by and through its attorneys, Kelley Drye & Warren LLP,

pursuant to 735 ILCS 5/2-202 of the Illinois Code of Civil Procedure, hereby seeks to have

Daniel Newcomb, National Legal Process Servers, 2008 Pennsylvania Ave., Wilmington, DE

19806 (License # 117-00885), who is over 18 years of age and not a party to this suit, appointed

as special process server.  This appointment is for the limited purpose of serving process of the

Summons and Complaint in the above-captioned matter upon Linens 'N Things, Inc., which is an

out of state Defendant as a Delaware corporation with its principle place of business located in

New Jersey.

Dated: March 14, 2008

Respectfully submitted,

_____
One of the Attorneys for Plaintiff,
DYSON, INC.

Timothy R. Lavender
Caroline C. Plater
KELLEY DRYE & WARREN LLP
333 West Wacker Drive, Suite 2600
Chicago, IL  60606
(312) 857-7070
Firm I.D. #16633

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT, LAW DIVISION

DYSON, INC.,

      Plaintiff

    v.

LINENS 'N THINGS, INC.,

      Defendant.

No. 08 L 002762

## ORDER

**IT IS HEREBY ORDERED** that:

    Daniel Newcomb, National Legal Process Servers, 2008 Pennsylvania Ave., Wilmington, DE 19806 (License # 117-00885), who is over the age of 18 and is not a party to this suit, shall be appointed as special process server in the above-entitled cause of action.

JUDGE BARBARA A. McDONALD

MAR 14 2008

Circuit Court - 1693

ENTERED:

_____
                  Judge

*Prepared By:*
Timothy R. Lavender
Caroline C. Plater
KELLEY DRYE & WARREN LLP
333 West Wacker Drive, Suite 2600
Chicago, IL 60606
(312) 857-7070
Firm I.D. #16633
*Attorneys for Plaintiff, Dyson, Inc.*